UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 26-01805-KK-DTBx** | Date: | April 17, 2026 |
| Title: | ***Julian Stiven Riveros Cadavid v. Department of Homeland Security et al.*** | | |

Present: The Honorable KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| | |
|---|---|
| Dominique Carr | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
| None Present | None Present |

**Proceedings: (In Chambers) Order GRANTING Petitioner's Motion for a Preliminary Injunction [Dkt. 2]**

## I. INTRODUCTION

On April 10, 2026, petitioner Julian Stiven Riveros Cadavid ("Petitioner"), who is currently detained in the custody of Immigration and Customs Enforcement ("ICE"), filed a Petition for Writ of Habeas Corpus ("Petition") against respondents the Department of Homeland Security ("DHS"), ICE, and the Warden of Adelanto ("Respondents"). ECF Docket No. ("Dkt.") 1, Petition ("Pet."). On the same day, Petitioner filed a Memorandum of Law in Support of a Temporary Restraining Order ("Application"), which the Court construed as an Ex Parte Application for a Temporary Restraining Order and converted to the instant Motion for Preliminary Injunction ("Motion"). Dkt. 2, Motion ("Mot."); dkt. 6.

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15. For the reasons set forth below, Petitioner's Motion is **GRANTED**.

## II. BACKGROUND

### A. RELEVANT FACTS

Petitioner was born in Colombia in 2000. Mot. at 5. In Colombia, Petitioner suffered persecution, extortion, and violence from a criminal group, including an assassination attempt in

which he was shot several times in his head and on his hand. Id. As a result, in 2022, Petitioner left Colombia and entered the United States, where he applied for asylum. Id. Since arriving in the United States, Petitioner has had a daughter with his fiancé, worked two jobs to support his family, and planned on opening his own barbershop in Van Nuys, California. Id. at 7-8.

On December 1, 2025, an Immigration Judge ordered Petitioner removed. Id. at 6. Because of the threats to his and his family's lives, however, Petitioner was granted withholding of removal to Colombia pursuant to the United Nations Convention Against Torture ("CAT"). Id. Petitioner did not appeal his order of removal, which subsequently became final. Id.

Since then, Petitioner has remained in immigration custody at the Adelanto ICE Processing Center. Id. While not entirely clear, it appears ICE is currently attempting to remove Petitioner to Honduras. Id. Petitioner has fully cooperated with ICE in effectuating his order of removal by providing the information necessary to complete his travel documents. Id. Nevertheless, no ICE officials have met with Petitioner to discuss the progress of his removal. Id. at 7.

As a result of his detention, Petitioner has experienced a "very weak state of mind and body." Id. at 6. Further, Petitioner has not been able to work to support his fiancé and two-year-old daughter, causing them "a great level of hardship." Id. at 7.

### B. PROCEDURAL HISTORY

On April 10, 2026, Petitioner filed the operative Petition against Respondents, claiming his detention is unlawful because his removal is "not likely to happen" in the reasonably foreseeable future. Pet. at 9.

On the same day, Petitioner filed the Application, which the Court converted to the instant Motion. Dkt. 6. In the Motion, Petitioner seeks his immediate release from Respondents' custody on the basis his detention violates 8 U.S.C. 1231(a)(6) ("Section 1231(a)(6)") and the Due Process Clause of the Fifth Amendment.[1] Mot. at 9-14.

On April 16, 2026, Respondents filed a Response, stating they "are not presenting an opposition argument to the TRO Application or Petition at this time." Dkt. 9, Response ("Resp.") at 2.

This matter, thus, stands submitted.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, the Court may grant a preliminary injunction to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b). A preliminary injunction is "an

[1] Petitioner's Motion also argues his potential removal to a third country without notice and an opportunity to be heard is unconstitutional. Mot. at 15-17. Because the Court finds Petitioner is entitled to release from Respondents' custody based on his claim that his removal is not likely in the reasonably foreseeable future, the Court need not consider Petitioner's other claims regarding third-country removal.

extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).

The party seeking such relief must establish: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities weighs in its favor; and (4) the injunction is in the public interest ("Winter factors"). See id. at 20. Courts in the Ninth Circuit also employ "an alternative 'serious questions' standard, [] known as the 'sliding scale' variant of the Winter standard." Fraihat v. U.S. Immigr. & Customs Enf't, 16 F.4th 613, 635 (9th Cir. 2021) (citation modified). Under the serious questions standard, the four Winter factors are "balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a preliminary injunction may be warranted where there are "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff," and so long as the other Winter factors are also met. Id. at 1132.

## IV.
## THE WINTER FACTORS WEIGH IN FAVOR OF GRANTING THE PRELIMINARY INJUNCTION

### A. LIKELIHOOD OF SUCCESS ON THE MERITS

The likelihood of success on the merits is the most important Winter factor, which "is especially true for constitutional claims." Junior Sports Mags. Inc. v. Bonta, 80 F.4th 1109, 1115 (9th Cir. 2023) (citing Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Here, the Court finds Petitioner is likely to succeed on the merits or has at least raised serious questions regarding the merits of his claim that his detention violates Section 1231(a)(6).

#### 1. Applicable Law

Under Section 1231(a), a noncitizen who has been ordered removed must be detained during the 90-day removal period. 8 U.S.C. § 1231(a)(1)(A), (2)(A). After the 90-day removal period, Section 1231(a)(6) "authorizes further detention" so long as the period of detention is "reasonably necessary to bring about [the noncitizen's] removal from the United States." Zadvydas v. Davis, 533 U.S. 678, 682, 689 (2001). A post-removal-period of six months is presumptively reasonable. Id. at 701. That presumption, however, "is just that – a presumption," Clark v. Martinez, 543 U.S. 371, 387 (2005) (O'Connor, J., concurring), and may be rebutted if the petitioner demonstrates that the length of their post-removal-period is "[in]consistent with the purpose of effectuating removal," id. at 384. See Trinh v. Homan, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The Supreme Court in Zadvydas outlined a 'guide' for approaching these detention challenges . . . not a prohibition on claims challenging detention less than six months." (quoting Zadyvdas, 533 U.S. at 700-01)); Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 395 (D.N.J. 2025) (same); Cruz Medina v. Noem, 794 F. Supp. 3d 365, 375 (D. Md. 2025) (same); Ali v. Dep't of Homeland Sec., 451 F. Supp. 3d 703, 706-07 (S.D. Tex. 2020) (same); Cesar v. Achim, 542 F. Supp. 2d 897, 903 (E.D. Wis. 2008) (same).

As with any other presumption, the Zadvydas presumption "can be rebutted only by contrary evidence." Godoy v. Spearman, 861 F.3d 956, 965 (9th Cir. 2017); accord Ndandu v. Noem, No. 3:25-cv-02939-RBM-MSB, 2026 WL 25848, at *4 (S.D. Cal. Jan. 5, 2026) (same). Thus, to successfully rebut the presumptively reasonable six-month period, "the petitioner must claim and

prove[] that [their] removal is not reasonably foreseeable." Munoz-Saucedo, 789 F. Supp. 3d at 398. If removal is not reasonably foreseeable, "continued detention is no[t] [] authorized by statute." Zadvydas, 533 U.S. at 699.

**2. Analysis**

Here, Petitioner is likely to succeed on his claim that his continued detention violates Section 1231(a)(6). As an initial matter, Petitioner has been detained for over four months after his order of removal became final on December 1, 2025. See Mot. at 13. While his post-removal detention is within the presumptively reasonable six-month period under Zadvydas, Petitioner's removal does not appear reasonably foreseeable based on the record, especially in light of Respondents' failure to present an opposition argument. See Resp.

First, it is undisputed Petitioner has been granted CAT relief and cannot be removed to Colombia, the only other country to which he has ties. Mot. at 5-6; see also 8 C.F.R. §§ 1208.16, 1208.17 (governing withholding and deferral of removal under CAT). Petitioner's CAT relief thus "substantially increases the difficulty of removing him." Munoz-Saucedo, 789 F. Supp. 3d at 398; see also Villanueva v. Tate, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025) (finding removal not reasonably foreseeable where the petitioner has "been granted a withhold of his removal to Mexico, which [was] the only country to which he ha[d] a claim to citizenship or legal immigration status"); Nadarajah v. Gonzales, 443 F.3d 1069, 1082 (9th Cir. 2006) (holding a noncitizen's removal was not reasonably foreseeable where "the government was not entitled" to remove the petitioner to his country of citizenship).

Second, Petitioner's status makes his removal to alternative countries exceedingly unlikely, as "only five non-citizens granted withholding or CAT relief" have been removed to alternative countries between 2020 and 2023. Munoz-Saucedo, 789 F. Supp. 3d at 398 (citation modified); see also Johnson v. Guzman Chavez, 594 U.S. 523, 552 (2021) (Breyer, J., dissenting) ("Studies have . . . found that, once withholding-only relief is granted, the [noncitizen] is ordinarily not sent to another . . . country. Rather, the [noncitizen] typically remains in the United States for the foreseeable future."). Additionally, in 2017, "at most 21 people of the thousands with withholding of removal," including "dual citizens who only received withholding from one of their two other countries of origin," were deported to any country. Ndandu, 2026 WL 25848, at *5 (citation modified). While "historical outcomes do not necessarily control the result in any particular case," this data "supports the general inference that removal for this particular class of detainees is substantially more difficult." Munoz-Saucedo, 789 F. Supp. 3d at 398.

Third, to the extent ICE seeks to remove Petitioner to an alternative country such as Honduras, "third country removal still requires the affirmative assent of the receiving country." Ndandu, 2026 WL 25848, at *5 (citing 8 U.S.C. § 1231(b)(2)(E)(vii)). Respondents have not shown Honduras or any other country "is willing or currently considering" to accept Petitioner. Id. Even if Petitioner was to be removed to a third country, that process "would require additional, lengthy proceedings" because of Petitioner's right to seek fear-based relief. Id. (citation modified); see also Villanueva, 801 F. Supp. 3d at 703 ("[A]ny efforts to remove [the petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country finally identified."). Among other things, Petitioner "likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings," which "further demonstrates that removal is not likely in the reasonably foreseeable future." Ndandu,

2026 WL 25848, at *5 (quoting Zavvar v. Scott, Civil Action No. 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sep. 8, 2025)). Indeed, that Petitioner has already been granted relief denied to the overwhelming majority of applicants is a "powerful indication of the improbability of his foreseeable removal, by any objective measure." Nadarajah, 443 F.3d at 1082.

For these reasons, the Court finds there is no significant likelihood of Petitioner's removal in the foreseeable future, and his detention is therefore not authorized under Section 1231(a)(6). Accordingly, the first and most important Winter factor weighs in favor of Petitioner.

## B. LIKELIHOOD OF IRREPARABLE HARM

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (citation modified) (quoting Melendres, 695 F.3d at 1002). "Deprivation of physical liberty by detention constitutes irreparable harm." Arevalo v. Hennessy, 882 F.3d 763, 767 (9th Cir. 2018) (citing Hernandez, 872 F.3d at 994); see also Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1037 (N.D. Cal. 2025) ("'[T]he irreparable harms imposed on anyone subject to immigration detention . . .' are self-evident." (quoting Hernandez, 872 F.3d at 995)). Among other harms, immigration detention results in "subpar medical and psychiatric care" for detainees and imposes "economic burdens" and "collateral harms" on the families of detainees. Hernandez, 872 F.3d at 995. "In the absence of an injunction, harms such as these will continue to occur needlessly on a daily basis." Id.

Here, as stated above, Petitioner has shown his detention is likely unlawful because his removal is not reasonably foreseeable. Further, Petitioner's extended confinement has caused him to suffer from a "very weak state of mind and body" and to be separated from his fiancé and two-year-old daughter. Mot. at 6-7. Hence, Petitioner and his family are, and will continue to be, irreparably harmed absent relief from this Court.

Accordingly, the second Winter factor weighs in favor of Petitioner.

## C. BALANCE OF EQUITIES AND PUBLIC INTEREST

The final two Winter factors "merge when the Government is the opposing party." Nken v. Holder, 556 U.S. 418, 435 (2009). The Ninth Circuit has recognized "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." Galvez v. Jaddou, 52 F.4th 821, 832 (9th Cir. 2022).

Here, because Petitioner has demonstrated a likelihood of success on his claim that his detention is unlawful, the balance of equities and public interest "tip[] sharply" in his favor, All. for the Wild Rockies, 632 F.3d at 1135, especially in light of Respondents' failure to present an opposition argument, Resp. at 2.

Accordingly, the third and fourth Winter factors weigh in favor of Petitioner.

* * *

Thus, because all four Winter factors weigh in his favor, and especially in light of Respondents' failure to present an opposition argument, Petitioner is entitled to injunctive relief in the form of his immediate release from Respondents' custody. See Resp. at 2.

## V.
## CONCLUSION

For the reasons set forth above, the Court orders as follows:

1. Petitioner's Motion is **GRANTED**;[2]
2. Respondents are **ORDERED** to immediately release Petitioner from their custody, subject to reasonable conditions under 8 U.S.C. 1231(a)(3);
3. Respondents are **ENJOINED** from relocating Petitioner outside the Central District of California pending final resolution of this case; and
4. Respondents are **ORDERED** to file a status report **no later than April 20, 2026,** regarding their compliance with this Order.

This Order shall remain in effect until further order by the Court. Failure to comply with this Order will result in sanctions. Pursuant to General Order No. 05-07, further proceedings on the merits of the Petition are referred to the Magistrate Judge. Any objections to Report and Recommendations issued by the Magistrate Judge shall be filed no later than three (3) days from the date of the Report and Recommendation.

**IT IS SO ORDERED**.

[2] Federal Rule of Civil Procedure 65(c) permits a court to grant injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court 'with discretion as to the amount of security required, if any.'" Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009) (emphasis removed) (quoting Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003)). Here, it is unlikely Respondents will incur any significant costs, and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." Baca v. Moreno Valley Unified Sch. Dist., 936 F. Supp. 719, 738 (C.D. Cal. 1996). Accordingly, the Court waives the bond requirement.